UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WENDY ANN THORMAN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. C25-5993-KKE<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION |

## I. INTRODUCTION

Plaintiff seeks review of the decision partially denying her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by failing to provide clear and convincing reasons to discount her testimony. Dkt. No. 13 at 1. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1973, has an 8th grade education and a GED, and has worked most recently as a flagger. Dkt. Nos. 7, 8 (hereinafter Administrative Record ("AR")) at 295–312, 319. Plaintiff was last gainfully employed in March 2020. *Id.* at 263, 279, 290.

In March 2020, Plaintiff protectively applied for benefits, alleging disability as of March 1, 2020. AR at 246–52, 256–62. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 164–67, 170–77. After the ALJ conducted hearings in November 2021 and March 2022 (*id.* at 54–89), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 27–46. The Appeals Council denied review, and Plaintiff appealed to this Court, which granted the parties' stipulated motion to reverse the ALJ's decision and remand for further administrative proceedings. *Id.* at 1–7, 1061–79.

On remand, the ALJ held hearings in May and July 2025 (AR at 996–1033), and thereafter issued a decision finding Plaintiff disabled beginning on January 25, 2024, but not disabled before that date. *Id.* at 965–83. Plaintiff appealed the ALJ's decision. Dkt. No. 3.

## III. THE COMMISSIONER'S FINAL DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since March 1, 2020, her alleged disability onset date.
>
> **Step two:** Plaintiff has the following severe impairments: arthritis, degenerative disc disease, degenerative joint disease, fibromyalgia, right foot fracture, post-traumatic stress disorder, personality disorder, bipolar disorder, depressive disorder, and substance use disorder.
>
> **Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity ("RFC"):** Before January 25, 2024, Plaintiff had the RFC to perform light work. She could perform no more than occasional climbing and no more than frequent stooping, kneeling, crouching, or crawling. She could not have more than occasional exposure to hazards or vibration. She could perform simple tasks that follow a set routine, that do not require more than frequent interaction with supervisors or more than occasional interaction with co-workers or the general public.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

> Beginning on January 25, 2024, Plaintiff has had the RFC to perform light work that does not require more than occasional climbing or frequent stooping, kneeling, crouching, or crawling. She cannot have more than occasional exposure to hazards or vibration. She can perform simple tasks that follow a set routine, and that do not require more than frequent interaction with supervisors or more than occasional interaction with co-workers or the general public. She can perform work that allows her to be frequently absent or off-task.
>
> **Step four:** Since her alleged onset date, Plaintiff has been unable to perform past relevant work.
>
> **Step five:** Before January 25, 2024, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and Plaintiff was therefore not disabled during that time. But beginning on January 25, 2024, there were no jobs that Plaintiff could perform and she became disabled on that date.

AR at 965–83.

## IV. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* at 954.

## V. DISCUSSION

Plaintiff argues the ALJ erred in discounting Plaintiff's subjective symptom testimony and contends that this error led to an erroneous RFC assessment and step-five finding for the period before January 25, 2024. Dkt. No. 13. The Commissioner argues the ALJ's decision is free from harmful legal error, supported by substantial evidence, and should be affirmed. Dkt. No. 15.

The ALJ summarized Plaintiff's allegations and explained that he discounted them because: (1) Plaintiff's allegations of disabling physical limitations are inconsistent with her "primarily unremarkable" objective examination findings, (2) Plaintiff's allegations of disabling manipulative limitations are inconsistent with the medical record, (3) Plaintiff's allegations of disabling mental health limitation are inconsistent with the many normal examination findings, and (4) Plaintiff's activities contradicted her allegations. AR at 973–77. Plaintiff contends that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014). The Court will address each of Plaintiff's arguments in turn.

### A. The ALJ Did Not Err in Finding Plaintiff's Reports of Disabling Pain Inconsistent With the Objective Medical Evidence and Plaintiff's History of Conservative Treatment.

The ALJ found that, prior to Plaintiff's January 2024 motor vehicle accident, the medical evidence regarding physical impairments was inconsistent with the degree of limitation Plaintiff asserted. AR at 973. The ALJ acknowledged the evidence establishing the existence of Plaintiff's degenerative disc disease and degenerative joint disease. *Id.* (citing *id.* at 376, 730). The ALJ explained, however, that "despite the issues demonstrated on imaging, findings of the claimant's remaining ability to function on physical examination have been primarily unremarkable and

inconsistent with the degree of limitation asserted." *Id*. To support his conclusion, the ALJ cited examination notes documenting Plaintiff's normal range of motion, balance, reflexes, and gait, as well as full strength and sensation. *Id*. (citing *id*. at 532, 664, 668). The ALJ also cited notes showing that even when Plaintiff had some mild or moderate abnormalities, she nonetheless displayed normal strength, intact sensation, joint stability, and normal range of motion in her joints. *Id*. (citing *id*. at 699–700, 718). The ALJ properly considered whether the objective examination findings are consistent with Plaintiff's reports of debilitating pain. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Moreover, the ALJ emphasized the improvement that Plaintiff experienced with physical therapy treatment and medication. AR at 973–75. Plaintiff had four physical therapy treatment visits (*id*. at 2957–3015) and a subsequent provider instructed Plaintiff to continue physical therapy visits. *Id*. at 3047. After a longer discussion of Plaintiff's medical history, the ALJ considered the beneficial effects of "generally routine and conservative" treatment as one reason to discount Plaintiff's symptom reports. *Id*. at 974–76. Specifically, the ALJ noted that although Plaintiff's pain was not always controlled with medication, "treatment methods generally were helpful, when she engaged in them." *Id*. at 976.[3]

Plaintiff contends that the ALJ relied on a "supposition rather than a medical finding" that contradicts her symptom reports of physical limitations, in that the ALJ cited findings from short, one-time medical appointments that do not reflect Plaintiff's ability to sustain work. Dkt. No. 13 at 3. Plaintiff also disputes the ALJ's conclusion that her symptoms improved with medication,

---

[3] The ALJ also noted that Plaintiff was prescribed muscle relaxers and provided injections, but her doctor refused to refill her oxycodone prescription when Plaintiff refused to follow medical advice for almost a year to get involved at a pain clinic and "show[ed] a pattern of inappropriate usage" instead. AR at 3018. The ALJ nonetheless concluded that Plaintiff's "inappropriate use does not clearly establish a consistency *or* inconsistency in weighing the symptom reports." *Id*. at 974 (emphasis added).

contending that if her symptoms were alleviated by medication she would not have undergone steroid injections. *Id.* at 4.

Plaintiff's arguments do not establish error in the ALJ's reasoning. An ALJ properly considers whether a claimant's testimony is consistent with the objective medical evidence and the type and efficacy of modalities used to treat symptoms. *See Smartt v. Kijakazi*, 53 F.4th 489, 499–500 (9th Cir. 2022). Plaintiff has not argued that the ALJ erred in summarizing the medical record as indicating that treatment was generally helpful for Plaintiff "when she engaged in [it.]" Although Plaintiff may prefer to weigh the evidence differently, Plaintiff has not established that the ALJ erred in finding that normal objective findings and evidence of improvement with treatment were inconsistent with her reports of disabling physical limitations.

**B. The ALJ Did Not Err in Discounting Plaintiff's Reports of Disabling Manipulative Limitations as Unsupported by the Record.**

At the 2025 hearing, Plaintiff testified that since 2019 she has had significant limitations in using her hands and could not grasp onto a mop to clean or lift anything weighing more than 10 pounds. AR at 1008–09. The ALJ noted that at the same hearing, however, Plaintiff "inconsistently" testified that she could hold onto assistive devices, such as a walker, a wheelchair, and a cane. *See id.* at 976 (citing *id.* at 1012–13). The ALJ acknowledged that Plaintiff was diagnosed with osteoarthritis in her right hand, but stated that "there is no evidence of grip issues prior to January 2024" when she became disabled. *Id.* at 976.

Plaintiff notes that she reported to the agency in April 2020 that she struggled to grip "things like a hairbrush" (AR at 150), but Plaintiff has not shown that she reported this issue to providers and does not dispute that, as the ALJ noted, grip deficits are not documented in the medical record before January 2024. *Id.* at 976. Plaintiff points only to her own report of problems gripping a hairbrush, but does not identify any objective grip-related findings in the record before

January 2024, and thus has not shown that the ALJ erred in discounting her alleged grip limitations based on lack of objective corroboration. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's assessment of a claimant's allegations where the "claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence").

**C. The ALJ Did Not Err in Assessing Plaintiff's Mental Health Limitations.**

The ALJ first explained that "while the medical record shows some areas of limited psychological functioning," he discounted Plaintiff's reports of disabling limitations because she was "generally alert, and demonstrated appropriate hygiene, grooming, rate of speech, and eye contact, and logical, linear, and coherent thinking[,]" although she was occasionally anxious or depressed. AR at 975 (citing *id*. at 578, 582, 586, 590, 594, 598, 602, 606, 686, 690, 702–03, 712, 748, 759–60, 780, 785, 799, 803–04, 807, 810–11, 814, 818, 858, 887, 900, 919, 922).

Plaintiff argues that the ALJ incorrectly stated that her examination findings were normal because that he only cherry-picked those findings out of a record that demonstrated fluctuation in Plaintiff's symptoms. Dkt. No. 13 at 6. Plaintiff's argument overlooks that the ALJ included several significant mental limitations in the RFC assessment, finding that she was limited to performing simple tasks that follow a set routine, with limited social interaction. *See* AR at 971. The ALJ explicitly acknowledged that "the medical record shows some areas of limited psychological functioning" and cited many of the abnormal findings that Plaintiff highlights in her brief. *See id*. at 975. Under these circumstances, where the ALJ's RFC assessment accounts for significant mental limitations that Plaintiff alleged, Plaintiff has failed to show that the ALJ erred in nonetheless finding that those limitations were not disabling. *See Thomas v. Barnhart*, 278 F.3d

947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing.").

**D. Any Error With Respect to the ALJ's Interpretation of Plaintiff's Activities Is Harmless.**

Last, Plaintiff argues that the ALJ improperly discounted Plaintiff's alleged physical and mental symptoms by finding her allegations inconsistent with her daily activities. *See* AR at 976–77. The ALJ found that although Plaintiff reported debilitating physical pain and mental health issues, the record showed that she could perform daily activities, including food preparation, driving, cleaning, shopping, laundry, hygiene, self-care, and handling money. *Id*. (citing *id*. at 299–306, 381). The ALJ also noted that Plaintiff went to Bible study, spent time with family, played with her dogs, and painted. *Id*. at 970, 977 (citing *id*. at 599, 752). An ALJ may discount symptom allegations if they are inconsistent with the claimant's activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine a claimant's allegations where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Plaintiff also argues that the ALJ erred in failing to explain how the activities he cited were inconsistent with her testimony, and offers her own explanations as to why the activities are not inconsistent. Dkt. No. 13 at 4–5. Even if Plaintiff is correct that the ALJ erred in failing to explain why he found Plaintiff's activities to be inconsistent with her testimony, any error is harmless because, as explained in the previous sections of this order, the ALJ provided other independently valid reasons to discount her testimony. *See Carmickle*, 533 F.3d at 1162–63.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 2nd day of September, 2026.

Kymberly K. Evanson
United States District Judge